UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORINIA

| | |
|---|---|
| RAUL V.,[1]<br><br>                              Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO, *Commissioner of Social Security*, [2]<br><br>                              Defendant. | Case No.:  25cv1035-MSB<br><br>**ORDER REVERSING AND REMANDING COMMISSIONER'S DECISION [ECF NOS. 13 & 15]** |

On April 24, 2025, Plaintif Raul V. ("Plaintiff") filed a Complaint pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final adverse decision by the Commissioner of Social Security ("Commissioner").  (ECF No. 1.)  Based on all parties' consent [see ECF Nos. 4, 6], this case is before the undersigned as presiding judge for all

---

[1] Under Civil Local Rule 7.1(e)(6)(b), "[o]pinions by the Court in [Social Security cases under 42 U.S.C. § 405(g)] will refer to any non-government parties by using only their first name and last initial."

[2]  On May 7, 2025, Frank Bisignano became the Commissioner of Social Security.  See SSA Commissioners, https://www.ssa.gov/history/bisignano.html (last visited on July 1, 2026).  Accordingly, Frank Bisignano is substituted for Leland Dudek as the Defendant in this lawsuit.  See Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party").

1

purposes, including entry of final judgment.  See 28 U.S.C. § 636(c).  Now pending before the Court is Plaintiff's Opening Brief, claiming error by the Administrative Law Judge ("ALJ") who conducted the administrative hearing and issued the decision denying Plaintiff's application for disability insurance benefits.  (ECF No. 13.)  The Court has carefully reviewed the Complaint [ECF No. 1], the Administrative Record ("AR") [ECF No. 10], Plaintiff's Opening Brief [ECF No. 13], and the Commissioner's Responsive Brief [ECF No. 15].  For the reasons set forth below, the Court **ORDERS** judgment be entered **REVERSING** the Commissioner's decision and **REMANDING** this matter for further administrative proceedings consistent with this Order.

## I.        PROCEDURAL BACKGROUND

On February 20, 2018, Plaintiff applied for disability and disability insurance benefits under Titles II and XVIII of the Social Security Act, alleging disability beginning on March 3, 2015.  (AR 151–153.)  The Commissioner denied his application initially on May 16, 2018, and again upon reconsideration on September 26, 2018.  (AR 85–88; AR 90–94.)  On November 21, 2018, Plaintiff requested an administrative hearing.  (AR 96–97.)  ALJ Kevin W. Messer held a hearing on October 23, 2019, during which Plaintiff appeared with counsel; Plaintiff and vocational expert, Katie Macy-Powers, testified. (AR 13–42.)  In a written decision dated December 2, 2019, the ALJ concluded Plaintiff had not been under a disability from January 1, 2018,[3] through the date of decision.  (AR 67–84).

On February 2, 2020, Plaintiff requested that the Appeals Council review the ALJ's decision.  (AR 143–145.)  The Appeals Council denied the request for review on August 24, 2020.  (AR 1–9.)  Plaintiff then sought review by this Court on December 7, 2020.[4]

---

[3] Although Plaintiff initially alleged disability beginning on March 3, 2015 [AR 152], during the first administrative hearing Plaintiff moved to amend the onset date to January 1, 2018, and ALJ Messer granted the oral motion.  (AR 40–41.)  However, the written decision erroneously referred to the alleged onset date as November 1, 2018.  (AR 81.)

[4] The summons has a signature date of November 20, 2020, but was received by the Court on December 7, 2020.  (AR 668.)

(AR 667–674.)  On August 18, 2022, the Court found error in the ALJ's decision, granted summary judgment to Plaintiff, and remanded the case for further administrative proceedings.  (AR 678–699.)  On January 31, 2023, the Appeals Council vacated the Commissioner's decision and remanded the case to an ALJ.  (AR 700–704.)

On remand, ALJ Messer conducted a new administrative hearing on November 17, 2023, during which Plaintiff was represented by counsel.  (AR 630–657.)  Both Plaintiff and an impartial vocational expert, Sonia Peterson, testified.  (Id.)  In a written decision dated March 14, 2024, the ALJ denied Plaintiff's application, concluding that Plaintiff has not been under a disability from January 1, 2018, through the date of the decision.  (AR 608–624.)  On April 15, 2024, Plaintiff requested review of the ALJ's decision.  (AR 797–803.)  The Appeals Council denied Plaintiff's request on March 3, 2025, making the ALJ's decision final.  (AR 591–598.)  See also 42 U.S.C. § 405(g)–(h). This timely civil action followed.

## II.    SUMMARY OF THE ALJ'S FINDINGS

In rendering his decision, the ALJ applied the Commissioner's five-step sequential evaluation process.  See 20 C.F.R. § 404.1520.  At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since January 1, 2018, the alleged onset date. (AR 614.)  At step two, the ALJ found Plaintiff has the following severe impairments: degenerative disc disease of lumbar spine, retrolisthesis, lumbar radiculopathy, chronic pain disorder, right-sided sciatica, bipolar mood disorder, generalized anxiety disorder, major depression disorder, panic disorder, and post-traumatic stress disorder ("PTSD"). (Id.)  The ALJ noted these medically determinable impairments significantly limit Plaintiff's ability to perform basic work activities.[5]  (Id.)

At step three, the ALJ determined Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the

---

[5] The ALJ also found that the following medically determinable impairments have a minimal effect on Plaintiff's ability to perform work activity: obesity, hypertension, mixed hyperlipidemia, alcohol dependence in remission, cervical strain, gastritis, and obstructive sleep apnea.  (AR 614.)

25cv1035-MSB

listed impairments in the Commissioner's Listing of Impairments.  (AR 615.)  Specifically, the ALJ found Plaintiff's physical impairments do not meet or medically equal listing 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root) or 1.16 (lumbar spinal stenosis resulting in compromise of the cauda equina).  (Id.)  See also 20 C.F.R. § Pt. 404, Subpt. P, App'x 1 § 1.01.  Additionally, the ALJ concluded Plaintiff's mental impairments do not meet or medically equal the criteria of both paragraphs B and C of listing 12.04 (depressive, bipolar and related disorders).  (AR 615–616.)  See also 20 C.F.R. § Pt. 404, Subpt. P, App'x 1 § 12.00.

Ultimately, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to do the following:

> [P]erform light work . . . except [Plaintiff] is limited to occasional climbing of ramps/stairs, occasional climbing of ladders/ropes/scaffolds, and occasional balancing, stooping, kneeling, crouching, and crawling.  [Plaintiff] can understand, remember, and carry out simple, routine tasks, have only occasional interaction with the general public, only occasional work-related, non-personal, non-social interaction with co-workers and supervisors, and is limited to jobs requiring only simple work-related decisions; however, [Plaintiff] can keep pace sufficient to complete tasks and meet quotas typically found in unskilled work.

(AR 616–17.)  In making this determination, the ALJ noted he considered all symptoms, medical opinions, and prior administrative medical findings.  (AR 617.)  The ALJ found that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not consistent with the medical evidence and other evidence in the record."  (AR 618.)

At step four, the ALJ found Plaintiff could not perform his past relevant work as an automobile mechanic.  (AR 622.)  Finally, at step five the ALJ determined there are other jobs existing in significant numbers in the national economy that Plaintiff can perform considering his age, education, work experience, and RFC.  (AR 623.)  The ALJ identified the following occupations: Office Helper, Dictionary of Occupational Titles ("DOT") 239.567-010; Price Marker, DOT 209.587-034; and Silver Wrapper, DOT 318.687-018.

25cv1035-MSB

(Id.)  The ALJ noted that the vocational expert's testimony was useful in finding that an individual with Plaintiff's RFC, age, education, and work experience would be able to make a successful adjustment to other work that exists in significant numbers in the national economy.  (AR 624.)  Thus, the ALJ concluded Plaintiff has not been under a disability from January 1, 2018, through March 14, 2024.  (Id.)

### III.    DISPUTED ISSUES

Plaintiff raises two issues as grounds for reversal:

1.  Whether the ALJ properly evaluated Dr. Bhavsar's medical opinion.

2.  Whether the ALJ properly considered Plaintiff's subjective symptom testimony. (ECF No. 13 at 10–29.)

### IV.    STANDARD OF REVIEW

Section 405(g) of the Social Security Act allows unsuccessful applicants to seek judicial review of the Commissioner's final decision.  See 42 U.S.C. § 405(g).  The scope of judicial review is limited, and the denial of benefits will only be disturbed if the final decision is not supported by substantial evidence or contains a legal error.  Luther v. Berryhill, 891 F.3d 872, 875 (9th Cir. 2018) (internal citations omitted).  "Substantial evidence" is a "'term of art' used throughout administrative law to describe how courts are to review agency factfinding."  Biestek v. Berryhill, 587 U.S. 97, 102 (2019) (quoting T-Mobile S., LLC v. City of Roswell, Ga., 574 U.S. 293, 301 (2015)).  The Supreme Court has said substantial evidence means "more than a mere scintilla," but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id. (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)) (internal quotation marks omitted).  The Ninth Circuit explained that substantial evidence is "more than a mere scintilla, but less than a preponderance."  Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (quoting Desrosiers v. Sec'y of Health & Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988)) (internal quotation marks omitted).

The reviewing court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from

25cv1035-MSB

the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." See Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007)) (internal quotation marks omitted).  Overall, the substantial-evidence standard is "highly deferential." Kitchen v. Kijakazi, 82 F.4th 732, 738 (9th Cir. 2023) (citing Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1002 (9th Cir. 2015)).  Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. See Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008) (internal citations omitted).  This includes deferring to the ALJ's credibility determinations and resolutions of evidentiary conflicts.  See Lewis v. Apfel, 236 F.3d 503, 509 (9th Cir. 2001) (citing Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).  Thus, the court may overturn the ALJ's decision only if the ALJ's conclusions are not supported by substantial evidence or the ALJ applied the wrong legal standard.  See Smith v. Kijakazi, 14 F.4th 1108, 1111 (9th Cir. 2021); Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004).  However, the reviewing court "may not reverse an ALJ's decision on account of an error that is harmless." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1055–56 (9th Cir. 2006)).

## V.    DISCUSSION

### A. Whether the ALJ Properly Evaluated Dr. Bhavsar's Medical Opinion

#### 1. Parties' arguments

Plaintiff argues the ALJ improperly rejected Dr. Bhavsar's opinion without providing an explanation supported by substantial evidence.  (ECF No. 13 at 10–19.)  Specifically, Plaintiff contends the ALJ did not conduct the required analysis of the supportability and consistency factors when finding Dr. Bhavsar's opinion only "partially persuasive." (Id. at 13–14.)  Plaintiff contends the ALJ committed legal error by failing to engage in a reasoned discussion, as the decision neither identified contradictory medical evidence nor addressed Dr. Bhavsar's key findings regarding Plaintiff's severe functional limitations.  (Id. at 13–14, 18.)  Further, Plaintiff argues the ALJ impermissibly isolated

25cv1035-MSB

and mischaracterized the record by emphasizing normal mental status findings and minimal ongoing mental health treatment, while disregarding Plaintiff's broader treatment history, documented impairments, and the overall severity and persistence of his symptoms. (Id. at 15–17.) In sum, Plaintiff argues the record supports Dr. Bhavsar's findings of more severe limitations, and the ALJ's selective adoption of Dr. Bhavsar's opinion renders the RFC determination legally deficient. (Id. at 19.)

In response, the Commissioner argues the ALJ's determination that Dr. Bhavsar's opinion was only partially persuasive was reasonable and supported by substantial evidence. (ECF No. 15 at 5–11.) First, to show Plaintiff's alleged limitations are inconsistent with the record, the Commissioner contends the ALJ properly highlighted Plaintiff's diagnosis of only moderate depression and limited ongoing mental health treatment. (Id. at 6–7 (citing AR 546, 619–20, 641–43, 648–49, 1024).) Additionally, the Commissioner argues that it is insufficient for Plaintiff to highlight isolated evidence that supports his position; rather, Plaintiff must demonstrate that no reasonable factfinder could have reached the same conclusion as the ALJ, a burden the Commissioner argues he has not met. (Id. at 7–8.) Further, the Commissioner contends "even with the presence of mental impairments, a lack of treatment can sometimes just be evidence that the claimant's mental impairments were not causing significant symptoms warranting treatment," which the Commissioner asserts was the case here. (Id. at 8.)

With respect to supportability, the Commissioner argues the ALJ properly concluded Dr. Bhavsar's opinion was "not supported by the generally normally mental status results [Dr. Bhavsar] documented during Plaintiff's examination." (Id. at 8 (citing AR 559–60, 622).) Based on Plaintiff's normal results, the ALJ reasonably concluded Plaintiff's mental impairments were not as severe as alleged. (Id. at 9.) The Commissioner argues that the ALJ discussed Dr. Bhavsar's opinion at multiple points in his decision and detailed which findings from Dr. Bhavsar's mental status examination failed to support more severe limitations. (Id.) Thus, the Commissioner maintains that the ALJ properly reviewed the medical evidence "and made independent conclusions

25cv1035-MSB

regarding the persuasiveness of [Dr. Bhavsar's] opinion consistent with the applicable regulations." (Id. at 10.)  Accordingly, the Commissioner argues the ALJ's evaluation of Dr. Bhavsar's opinion was reasonable and supported by substantial evidence.  (Id. at 11.)

### 2. Applicable law

Plaintiff applied for disability insurance benefits on February 20, 2018.  (AR 151–153.)  Because this is after March 27, 2017, the Social Security Administration's revised regulations for considering medical opinions apply.  See 20 C.F.R. § 404.1520c (2017).  Under the revised regulations, the ALJ does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)."  Id. § 404.1520c(a).  Instead, the ALJ must the evaluate the persuasiveness of those opinions using the following factors: supportability, consistency, the relationship between the source and the claimant, the source's specialization, and other factors such as the source's knowledge of other evidence and whether there was subsequently submitted evidence.  Id. § 404.1520c(c)(1)–(5).  The two most important factors are supportability and consistency.  Id. § 404.1520c(b)(2).  "Supportability" measures the degree to which objective medical evidence and supporting explanations buttress a medical finding.  Id. §§ 404.1520c(c)(1); 416.920c(c)(1).  "Consistency" is the extent to which an opinion or finding is consistent with evidence from other medical sources and non-medical sources in the record.  Id. §§ 404.1520c(c)(2); 416.920c(c)(2).

Under the revised regulations, "an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence."  Woods v. Kijakazi, 32 F. 4th 785, 787 (9th Cir. 2022); see also Johnathan F. v. Bisignano, No. 24CV1774-WQH (MSB), 2026 WL 35975, at *4 (S.D. Cal. Jan. 6, 2026), report and recommendation adopted sub nom. Fay v. Comm'r of Soc. Sec., No. 3:24-CV-1774-WQH-MSB, 2026 WL 836345 (S.D. Cal. Mar. 26, 2026).  The ALJ must address how they considered the consistency and supportability factors in sufficient detail to allow a reviewing court to determine whether that reasoning is supported by substantial evidence.  Titus L.S. v. Saul, No. 20cv04825-AFM, 2021 WL 275927, at *7 (C.D. Cal. Jan.

26, 2021) (citing <u>Ford v. Saul</u>, 950 F.3d 1141, 1154 (9th Cir. 2020); <u>Zhu v. Comm'r</u>, No. 20-3180, 2021 WL 2794533, at *6 (10th Cir. July 6, 2021) (applying the substantial evidence standard under the new 2017 regulations).  In addition to the supportability and consistency factors, the ALJ may consider the treatment or examining relationship, specialization, and other factors, but need not explain how these factors were considered.  20 C.F.R. § 416.920c(b)(2), (c)(1)-(5); <u>Woods</u>, 32 F.4th at 792.

### 3. Dr. Bhavsar's opinion

On September 4, 2018, Dr. Bhavsar performed a complete psychiatric evaluation of Plaintiff.  (AR 557–61.)  At the time of the examination, Dr. Bhavsar noted there were no medical records available for review.  (AR 558.)  Plaintiff's chief complaints were depression, indecisiveness, and bipolar disorder.  (AR 557.)  Plaintiff reported having "off and on" depression, irritable mood, and anxiety attacks.  (AR 558.)  Additionally, he described experiencing racing thoughts and difficulty sleeping but denied suicidal ideations and homicidal thoughts.  (<u>Id.</u>)  He denied any prior inpatient psychiatric treatment but reported receiving past outpatient psychiatric counseling.  (<u>Id.</u>)  Plaintiff reported difficulty with concentration and memory.  (<u>Id.</u>)  Dr. Bhavsar noted Plaintiff was taking medication for pain and discomfort stemming and had a history of head injury, hypertension, and neck and lower back pain.  (<u>Id.</u>)

The mental status examination revealed that Plaintiff was anxious but cooperative, with normal speech and a clear, coherent voice.  (AR 559.)  His mood was depressed with blunted affect, though he showed no psychomotor retardation and denied suicidal or homicidal ideation.  (<u>Id.</u>)  Plaintiff's thought processes were organized with no signs of looseness of association, flight of ideas, or tangential thinking.  (<u>Id.</u>)  However, Plaintiff exhibited paranoid and persecutory delusions, while denying other disturbances such as thought broadcasting or phobias.  (<u>Id.</u>)  Plaintiff denied hallucinations across all sensory modalities and was alert and fully oriented to time, place, person, and purpose.  (AR 559–60.)  Furthermore, his memory, concentration, and calculation tests yielded normal results.  (AR 560.)

Dr. Bhavsar diagnosed Plaintiff with severe bipolar mood disorder, mixed type, with psychotic features and severe generalized anxiety disorder.  (Id.)  Additionally, Dr. Bhavsar determined Plaintiff was severely limited in the following functional areas: (1) ability to follow detailed instructions; (2) ability to interact with the public, coworkers, and supervisors; (3) ability to comply with job rules, such as safety and attendance; (4) ability to respond to changes in a routine work setting; and (5) ability to respond to work pressure in a usual working setting.  (AR 561.)  However, Dr. Bhavsar opined Plaintiff was not limited in his ability to follow simple oral and written instructions and in his performance of daily activities.  (Id.)

### 4. The ALJ's treatment of Dr. Bhavsar's findings

In his written decision, the ALJ first discussed Dr. Bhavsar's findings when assessing the following areas of mental functioning: (1) understanding, remembering, or applying information; (2) interacting with others; and (3) concentrating, persisting, or maintaining pace.  (See AR 615–16.)  For example, the ALJ referenced Dr. Bhavsar's observations that Plaintiff "did not exhibit looseness of association, thought disorganization, flight of ideas, thought blocking, tangentiality or circumstantiality" when finding he had only a moderate limitation in understanding, remembering or applying information.  (AR 615.)  Similarly, the ALJ highlighted Dr. Bhavsar's report that Plaintiff presented appropriately dressed and well groomed, had good eye contact, and normal speech when finding he had only a moderate limitation in interacting with others.  (Id.)  The ALJ then summarized Dr. Bhavsar's opinion as follows:

> [Dr. Bhavsar] performed a psychological consultative examination, noting symptoms of an irritable mood off and on, racing thoughts, feelings of sadness, hopelessness, and has difficulty sleeping, as well as feeling depressed and angry on some days, but denied hallucinations.  In a mental status exam, Dr. Bhavsar reported the claimant did not exhibit looseness of association, thought disorganization, flight of ideas, thought blocking, tangentiality or circumstantiality.  Dr. Bhavsar reported the claimant denied auditory, visual, tactile, or olfactory hallucinations . . . Dr. Bhavsar reported the claimant was alert and was oriented to time, place, person and purpose.  Dr. Bhavsar reported the claimant was able to perform Serial 7s

25cv1035-MSB

and able to perform Serial 3s.  Dr. Bhavsar reported the claimant was able to spell the word "music" forward and backward.  The above findings are not consistent with the alleged severity of the claimant's mental impairments.

(AR 619–20 (internal citations omitted).)

The ALJ noted Dr. Bhavsar's diagnoses of "bipolar mood disorder, mixed type, severe and with psychotic features and generalized anxiety disorder, severe," and the various limitations he prescribed Plaintiff.  (AR 621–22.)  Ultimately, the ALJ found Dr. Bhavsar's opinion to be partially persuasive, explaining:

This opinion is only partially persuasive.  The undersigned finds the mental status results reached by Dr. Bhavsar persuasive because they are consistent with the claimant's moderate PHQ-9 score.  However, Dr. Bhavsar otherwise overestimates the claimant's limitations.  There is minimal evidence of ongoing mental health treatment in the medical record, which is inconsistent with severe mental limitations.  In support of this finding, the undersigned notes generally normal mental status results, which is inconsistent with severe limitations.

(Id. at 622 (internal citations omitted).)

### 5. Analysis

The ALJ was required to address both the consistency and supportability factors when assessing the persuasiveness of Dr. Bhavsar's opinion.  § 404.1520c(c)(1)–(5); Woods, 32 F. 4th at 787.  Here, the Court finds the ALJ sufficiently considered the consistency factor but ignored the supportability factor.  Nevertheless, this error is harmless because the ALJ's conclusion that Dr. Bhavsar's opinion was only "partially persuasive" is otherwise supported by substantial evidence.  Woods, 32 F. 4th at 787.

### a. Consistency

"Consistency" is the extent to which an opinion or finding is consistent with evidence from other medical sources and non-medical sources in the record.  §§ 404.1520c(c)(2); 416.920c(c)(2).  In other words, "the consistency factor looks outward" at the entire record.  Deniz v. O'Malley, No. CV 24-00332 SASP-RT, 2025 WL 4355512, at *3 (D. Haw. Sept. 11, 2025).  Here, the ALJ concluded Dr. Bhavsar's opinion was

inconsistent with the record two reasons.  (AR 618–22.)  First, the ALJ determined Dr. Bhavsar's assignment of severe functional limitations was inconsistent with Plaintiff's minimal mental health treatment.  (AR 622.)  The ALJ noted Plaintiff did not take psychotropic medication, he was not psychiatrically hospitalized, and he participated in only four months of counseling at the time of the hearing.  (AR 618 (citing AR 641–43).)  Furthermore, Plaintiff's case manager stated in December 2023 that Plaintiff had attended five counseling sessions, during which he worked on finding employment, enrolling in parenting classes, and attending education and financial workshops.  (AR 620 (citing AR 1024).)

Second, the ALJ concluded that Dr. Bhavsar's assignment of severe limitations in five functional areas was inconsistent with Plaintiff's normal mental status results.  (AR 622.)  Specifically, the ALJ noted that contemporaneous with Dr. Bhavsar's September 2018 consultative examination, Plaintiff exhibited only moderate depressive symptoms reflected by a PHQ-9[6] score of 12.  (AR 619 (citing AR 546).)  The ALJ found Dr. Bhavsar's opinion partially persuasive to the extent it aligned with a PHQ-9 score of 12, but found the opinion otherwise overstated the severity of Plaintiff's condition.  (AR 622.)

Plaintiff contends the ALJ mischaracterized the record by relying on a PHQ-9 score of 12 signifying moderate depression, while ignoring higher scores ranging from 13 to 20.  (ECF No. 13 at 14–15 (citing AR 1124, 1143, 1155).)  Where, as here, the record contains conflicting medical evidence, it is the ALJ's responsibility to assess credibility and resolve conflicts.  Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (citing Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003)).  "[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."  Tommasetti, 533 F.3d at 1038.  Moreover, if the evidence is "'susceptible to more than one rational

---

[6] "PHQ-9" is a screening tool used to diagnose depression.  Scores follow the following scale: 0–4 signifies minimal to no depression; 5–9 signifies mild depression; 10–14 signifies moderate depression; 15–19 signifies moderately severe depression; and 20–27 signifies severe depression.  See Maria Ablao, How Does the PHQ-9 Work?, LifeMD (July 25, 2025), https://www.lifemd.com/learn/how-does-the-phq-9-work.

25cv1035-MSB

interpretation, it is the ALJ's conclusion that must be upheld.'" Farlow v. Kijakazi, 53 F.4th 485, 488 (9th Cir. 2022) (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).  Based on a thorough review of the record, the Court finds the ALJ's interpretation as to the consistency of Dr. Bhavsar's opinion is rational.  Plaintiff does not point to specific evidence to support disturbing the ALJ's rational interpretation. (See generally ECF No. 13 at 10–19.)

In sum, the Court finds the ALJ provided substantial evidence in concluding Dr. Bhavsar's opinion was inconsistent with other medical evidence.  Biestek, 587 U.S. 97; Revels, 874 F.3d at 654.  Namely, the ALJ emphasized the absence of intensive psychiatric interventions, Plaintiff's normal mental status findings, and Plaintiff's moderate PHQ-9 score.  (AR 618–22.)  Therefore, the ALJ properly addressed the consistency factor.

### b. Supportability

"Supportability" is the extent to which a medical source supports their opinion with relevant objective medical evidence and supporting explanations.  20 C.F.R. § 416.920c(c)(1).  In other words, "[t]he supportability factor looks inward" at the source itself.  Deniz, 2025 WL 4355512, at *3.  The more relevant the objective medical evidence and supporting explanations presented by a medical source, the more persuasive the medical opinion will be.  Zhu, 2021 WL 2794533, at *6 (quoting 20 C.F.R. § 404.1520c(c)).  Here, the ALJ failed to articulate how he considered the supportability factor and instead appeared to conflate it with the consistency factor.  See Cross v. O'Malley, 89 F.4th 1211, 1214 (9th Cir. 2024) ("ALJs must explain how persuasive they find the medical opinion by expressly considering the two most important factors for evaluating such opinions: 'supportability' and 'consistency.'") (citing 20 C.F.R. § 416.920c(b)(2)).  The ALJ did not explain why Dr. Bhavsar's examination findings (e.g., irritable mood, racing thoughts, depressed feelings, but intact memory and thought process) supported the severe functional limitations Dr. Bhavsar assessed, or whether those limitations were supported by the overall record.  (AR 557–61.)  In fact, the ALJ's

discussion of Dr. Bhavsar's opinion did not mention the words "support" or "supportability" whatsoever.  (See AR 619–20, 621–22.)  Thus, the ALJ did not explicitly articulate why Dr. Bhavsar's opinion is unsupported.  This omission is significant because Dr. Bhavsar's evaluation notes the doctor did not review any other medical records.  (AR 558.)  The Court is unable to trace the path of the ALJ's reasoning without any specific articulation of the supportability factor, thereby constituting error.

The Court may nonetheless affirm the ALJ's decision, so long as the error is harmless.  Ford, 950 F.3d at 1154 (citing Tommasetti, 533 F.3d at 1038).  Here, the Court finds there is substantial evidence supporting the ALJ's finding that Dr. Bhavsar's opinion was only partially persuasive.  For example, the ALJ referenced Dr. Bhavsar's observations that Plaintiff's appearance and presentation were normal, he had a cooperative attitude, his speech was clear, and his thought process was logical.  ( AR 615–22 (citing AR 557–61).)  These normal findings are similarly reflected in treatment notes from October to December 2019, where Plaintiff was cooperative; exhibited normal body movements; maintained good eye contact; spoke with normal tone, volume, and rate; and was alert and oriented to time, place, person, and purpose.  (AR 1123–59.)

Additionally, it is the ALJ's responsibility, not the claimant's physicians, to determine an individual's RFC.  See 20 C.F.R. § 404.1545.  Here, the ALJ reasonably incorporated portions of Dr. Bhavsar's opinion that were supported by objective evidence into his RFC, while omitting portions lacking support.  (AR 616–17.)  Specifically, the RFC limited Plaintiff to simple, routine tasks; occasional interaction with the general public; and only occasional, work-related, non-personal interaction with coworkers and supervisors.  (AR 617.)  This corresponds with Dr. Bhavsar's findings that Plaintiff had no limitations with respect to following simple oral and written instructions and performing daily activities.  (AR 561.)  At the same time, the ALJ properly declined to adopt Dr. Bhavsar's findings of "severe" limitations in functional areas such as the ability to interact with others and ability to comply with job rules.  (AR 561.)

The Ninth Circuit has made clear that an RFC determination need not mirror every limitation in a medical opinion, so long as it reasonably translates the supported findings into concrete functional terms.  Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1223 (9th Cir. 2010) (finding no error where an ALJ's RFC incorporated some, but not all, limitations identified by medical opinions); Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008) (holding the same).  Here, the record contains multiple interpretations of Plaintiff's mental status, with varying assessments of limitations.  Accordingly, the ALJ's RFC reflects a rational interpretation of the record and incorporates Dr. Bhavsar's supported findings while excluding those that were neither explained nor corroborated.  Burch, 400 F.3d at 679.  For the foregoing reasons, the Court finds that the ALJ's determination that Dr. Bhavsar's opinion was only partially persuasive is supported by substantial evidence, and his failure to discuss the supportability factor was harmless.

### 6. Conclusion

After finding Dr. Bhavsar's opinion "partially persuasive," the ALJ was required to discuss the consistency and supportability factors in some detail.  Zhu, 2021 WL 2794533, at *6.  Although the ALJ adequately addressed consistency by comparing Dr. Bhavsar's opinion with the broader medical record, he did not separately analyze supportability.  However, the Court finds the ALJ's failure to articulate his supportability analysis was harmless error because the ALJ's conclusion is otherwise supported by substantial evidence.  Accordingly, the Court concludes the ALJ did not err in finding Dr. Bhavsar's medical opinion partially persuasive.

### B. Whether the ALJ Properly Considered Plaintiff's Subjective Symptom Testimony

#### 1. Summary of the parties' arguments

Plaintiff argues that the ALJ impermissibly rejected his subjective symptom testimony.  (ECF No. 13 at 19–29.)  After determining that Plaintiff had underlying impairments that could reasonably produce his alleged pain and other symptoms, Plaintiff asserts the ALJ could only discount his testimony by identifying "specific, clear

and convincing" reasons. (Id. at 21.)  Here, Plaintiff contends the ALJ's purported reasons for rejecting his testimony are insufficient.  (Id.)  First, Plaintiff argues that "beyond the conclusory statement that the objective evidence does not support the testimony, the ALJ nowhere connects any of [Plaintiff's] testimony to the ALJ's analysis." (Id. at 23.)  Next, Plaintiff contends "the ALJ's routine statement that [Plaintiff's] testimony is not entirely consistent with the 'other evidence in the record'" is also inadequate.  (Id. at 24.)  Furthermore, Plaintiff argues that the ALJ improperly parceled through the record, selectively relying on certain entries while disregarding others.  (Id. at 25–26.)  Finally, Plaintiff maintains that the ALJ improperly rejected Plaintiff's testimony because he can perform certain daily activities.  (Id. at 27–28.)

In response, the Commissioner argues substantial evidence supports the ALJ's evaluation of Plaintiff's subjective symptom testimony.  (ECF No. 15 at 11–18.)  The Commissioner asserts the ALJ properly considered Plaintiff's testimony, found parts of it persuasive, and "incorporated multiple limitations into his RFC."  (Id. at 11.)  However, the ALJ "stopped short of adopting all of Plaintiff's complaints . . . because they were inconsistent with the objective medical findings, Plaintiff's improvement with treatment, and his activities."  (Id. at 12.)  Therefore, the Commissioner contends the ALJ reasonably found Plaintiff's alleged limitations were inconsistent with the medical evidence, citing various medical records supporting less severe limitations.  (Id. at 12–14.)  Regarding Plaintiff's contention that the ALJ merely summarized the evidence without any analysis, the Commissioner responds that the ALJ provided "multiple, specific reasons for discounting Plaintiff's subjective complaints."  (Id. at 14.)  For example, the ALJ reasonably found Plaintiff's allegations were inconsistent with his reported ability to walk one mile, three times a week, perform many household chores, and work part-time as a mechanic.  (Id. at 15–17.)  The Commissioner concludes that the ALJ reasonably determined "Plaintiff was not as limited as he claimed."  (Id. at 17.)  Thus, because substantial evidence supports the ALJ's analysis, the Commissioner contends the Court should defer to the ALJ's findings.  (Id. at 18.)

25cv1035-MSB

**2. Applicable law**

When evaluating the credibility of a claimant's allegations regarding subjective symptoms such as pain, the ALJ must engage in a two-step analysis. See Johnson v. Kijakazi, No. 19-17359, 2022 WL 1553259, at *1 (9th Cir. May 17, 2022); Lingenfelter v. Astrue, 504 F.3d 1028, 1035–36 (9th Cir. 2007). First, the ALJ must determine whether there is objective medical evidence of an underlying impairment that "could reasonably be expected to produce the pain or other symptoms alleged." Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017) (quoting Garrison, 759 F.3d at 1014–15. The claimant is not required to show that an underlying impairment could reasonably be expected to cause the severity of the pain or other symptoms alleged, but only that it could have reasonably caused some degree of the symptoms. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009) (citing Lingenfelter, 504 F.3d at 1036).

Second, if the claimant meets the first step and there is no evidence of malingering, then the ALJ may reject the claimant's statements about the severity of her symptoms "only by offering specific, clear and convincing reasons for doing so." Trevizo, 871 F.3d at 678 (quoting Garrison, 759 F.3d at 1014–15). "The clear and convincing standard is the most demanding required in Social Security cases." Revels, 874 F.3d at 655 (quoting Garrison, 759 F.3d at 1014–15). General findings are insufficient, and the ALJ must identify which specific pain and symptom statements are being discounted and what evidence undermines those claims. See Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020) (citing Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014)); see also Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) ("The ALJ must specify what testimony is not credible and identify the evidence that undermines the claimant's complaints.")

"Because symptoms, such as pain, are subjective and difficult to quantify," the ALJ considers "all of the evidence presented," including information about the claimant's prior work record, statements about their symptoms, evidence submitted by their medical sources, and observations by the Agency's employees and other persons. See

20 C.F.R §§ 404.1529(c)(3), 416.929(c)(3). Factors the ALJ may consider, in addition to objective medical evidence, include Plaintiff's daily activities; the location, duration, frequency, and intensity of their pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain; treatment; and any other measures used to relieve pain. See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); Titles II & XVI: Evaluation of Symptoms in Disability Claims, Social Security Ruling ("SSR") 16-3P, 2017 WL 5180304, at *7–8 (S.S.A. Oct. 25, 2017). The ALJ may also consider inconsistencies between Plaintiff's statements regarding pain and the medical evidence. See 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4); SSR 16-3p, 2017 WL 5180304, at *8–9.

### 3. Plaintiff's testimony[7]

At the administrative hearing on November 17, 2023, Plaintiff testified about his physical limitations, pain, and treatment, among other things. (AR 630–57.) Plaintiff testified he spends approximately eight hours a week working on cars, performing "little maintenance" on vehicles for family and friends. (AR 636–37.) These tasks include replacing brakes, oil, wiper blades, or air filters—"minor things that [don't] involve me bending over for long periods of time." (AR 637.) Plaintiff further testified he dedicates one to two hours per day to reselling items online, which also requires him to attend garage sales or swap meets to obtain items for sale. (AR 636.) When asked what physically limits him from doing more work, Plaintiff reported that his lower back is the primary issue. (AR 639.) "[I]f I stand long periods of time it starts aching. If I sit long periods of time it starts aching and then there's the worse pain when I bend over mostly to the front." (Id.)

Regarding treatment, Plaintiff said he does daily exercises and takes Hydrocodone but has not had surgery. (Id.) He further testified he does not use an assistive device when walking, he can walk approximately one block without taking a break, and he can

---

[7] Plaintiff had an initial administrative hearing on October 23, 2019. (AR 13–42.) This Court relies primarily on the most recent administrative hearing on November 17, 2023. (AR 630–57.)

25cv1035-MSB

stand or sit for approximately fifteen minutes without pain. (AR 639–40.) Plaintiff can carry thirty to forty pounds when bending is not required. (AR 640.) Plaintiff testified that he has a bracing device but does not typically use it because it hurts his ribs. (Id.) Since applying for disability in 2018, Plaintiff said his symptoms have gotten worse and "the periods of pain are longer." (AR 641.) Plaintiff said he has never sought treatment in an emergency room or been hospitalized for physical health issues. (AR 643.)

As to his mental impairments, Plaintiff reported experiencing worry, stress, depression, and feelings of hopelessness. (AR 641.) Plaintiff testified that he participated in helpful counseling classes for approximately four months at the time of the hearing. (AR 642.) Plaintiff further stated he has never been hospitalized or taken medication for mental health issues. (AR 643.) Additionally, he said he has difficulty maintaining focus or concentration, noting this occurs approximately ten minutes into starting any activity. (Id.) Plaintiff explained that he loses focus ten minutes into an activity. (AR 647–48.)

Plaintiff said that he has full custody of his two sons, ages ten and twelve. (AR 643.) He explained that his family members assist with caring for his children, while he cares for himself by maintaining basic hygiene, dressing, grooming, running errands, and completing chores around the house. (AR 643–45.) Plaintiff noted he experiences persistent pain while performing these activities. (AR 644.) Plaintiff stated that his only meaningful relief comes from laying down or resting. (Id.)

### 4. Analysis

The Court now undertakes the two-step analysis to determine whether the ALJ properly challenged Plaintiff's subjective testimony. See Johnson, 2022 WL 1553259, at *1; Lingenfelter, 504 F.3d at 1035–36. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, therefore satisfying the first prong. (AR 618.) See, e.g., Vasquez, 572 F.3d at 591 (finding the ALJ satisfied step one where the "ALJ acknowledged that [plaintiff's] injuries 'could reasonably be expected to produce *some* of the pain and other symptoms

alleged'") (emphasis in original) (internal citations omitted).  Additionally, neither party alleges there is any evidence of malingering.  (See generally ECF Nos. 13 & 15.)  Thus, the ALJ may reject Plaintiff's testimony "only by providing specific, clear, and convincing reasons."  See Brown-Hunter v. Colvin, 806 F.3d 487, 489 (9th Cir. 2015).  In addition to giving "clear and convincing" reasons, the ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony."  Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001).  Failure to do so is a harmful legal error, as it precludes the court from conducting a meaningful review of the ALJ's reasoning.  See Brown-Hunter, 806 F.3d at 492 ("If the ALJ fails to specify his or her reasons for finding claimant testimony not credible, a reviewing court will be unable to review those reasons meaningfully without improperly 'substitut[ing] our conclusions for the ALJ's, or speculat[ing] as to the grounds for the ALJ's conclusions.'") (quoting Treichler, 775 F.3d at 1103).  Here, the Court finds that the ALJ failed to meet the demanding "clear and convincing" standard.

### a. Specificity

First, the ALJ failed to identify which of Plaintiff's statements he found not credible and why, leaving this Court without the necessary information to conduct a meaningful review.  See Brown-Hunter, 806 F.3d at 493; Reddick, 157 F.3d at 722 ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.") (internal citations omitted).  The ALJ merely explained that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."  (AR 618.)  The Ninth Circuit has held that this boilerplate language does not rise to the level of "specific, clear, and convincing" reasons for discounting a claimant's subjective testimony.  See, e.g., Treichler, 775 F.3d at 1103 (holding that a boilerplate introductory sentence falls short of "meeting the ALJ's responsibility" to discuss the objective evidence); Vasquez, 572 F.3d at 592 (finding that the "vague allegation that [Plaintiff's claims] were 'not

consistent with the objective medical evidence'" was inadequate to reject Plaintiff's subjective testimony).

The ALJ spent several pages summarizing Plaintiff's administrative hearing testimony and various reports Plaintiff made to medical providers.  (AR 617–22.)  At no point did the ALJ specifically identify which of Plaintiff's statements he found not credible or explain why.  (Id.)  Because the ALJ only broadly referred to Plaintiff's statements, the Court cannot truly review whether the ALJ provided clear and convincing reasons for rejecting his testimony.  (AR 618.)  See Lambert, 980 F.3d at 1277 (holding that while the ALJ does not have to perform a "line-by-line exegesis of the claimant's testimony," the ALJ must offer more than a non-specific conclusion that the testimony was inconsistent with medical treatment).  Nevertheless, the Court assesses the ALJ's purported reasons for discounting Plaintiff's testimony in turn.

### b.  Objective medical evidence

The ALJ appears to primarily discredit Plaintiff's testimony because Plaintiff's symptoms are "inconsistent with the overall longitudinal record."  (AR 620.)  An ALJ's identification of inconsistencies between a plaintiff's testimony and the objective medical evidence may be a clear and convincing reason for discounting testimony.  See, e.g., Ferguson v. O'Malley, 95 F.4th 1194, 1200 (9th Cir. 2024); Koch v. Berryhill, 720 F. App'x 361, 364 (9th Cir. 2017).  However, an ALJ cannot rely solely on objective medical evidence to discredit an individual's symptom testimony.  See 20 C.F.R § 404.1529(c)(2); SSR 16-3p, 2017 WL 5180304, at *5 ("[W]e will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual").

Based on the Court's review of the record, it is evident that the ALJ emphasized certain favorable medical evidence while underplaying other, less favorable medical evidence.  See Holohan, 246 F.3d at 1207 (finding an ALJ may not "selectively rely on some entries in the record" while ignoring others that suggest a different result).  The

21

25cv1035-MSB

ALJ acknowledged Plaintiff's severe physical impairments resulting in pain and summarily concluded "the full record shows his symptoms are not disabling."  (AR 618.)  The ALJ cited various treatment notes showing mostly normal findings.  For example, the ALJ emphasized an examination by Dr. Sabourin, which revealed "normal and painless range of motion" in Plaintiff's cervical spine and "moderate reduction in range of motion" in Plaintiff's lumbar spine.  (Id. (citing AR 483–86).)  Additionally, the ALJ noted that PA-C Kirui reported Plaintiff had "normal gait and otherwise unremarkable findings."  (Id. (citing AR 1064).)  Similarly, the ALJ stated Dr. Kobayashi observed only "mild lumbar tenderness, no weakness in the right leg and no edema" on one occasion and "no leg weakness, no leg edema, and normal gait" on another occasion.  (AR 618–19 (citing AR 1046, 1076).)  Simultaneously, the ALJ underplayed other findings from these same providers' notes, including: ten epidural injections [AR 1109], referral for orthopedic surgery [AR 1048], chronic lumbar degenerative disc disease [AR 1050, 1075, 1078], and chronic right-sided low back pain [AR 1046, 1064, 1101, 1107].  The ALJ failed to explain how these findings were weighed against the "normal" and "mild" observations.  (AR 618–19.)

With respect to Plaintiff's mental impairments, the ALJ simply stated that the record shows that the Plaintiff "has mental health impairments; however, a review of the full record shows his symptoms are not disabling."  (AR 619.)  After acknowledging Plaintiff's testimony of on and off irritable mood, racing thoughts, difficulty sleeping, and feelings of sadness, hopelessness, and depression, the ALJ emphasized treatment notes observing only "moderate depression."  (AR 618–21.)  The ALJ downplayed findings of generalized anxiety disorder [AR 144, 1129, 1153], major depressive disorder [AR 1129, 1137, 1149], bipolar mood disorder [AR 144], and other severe mental impairments.  As discussed above, the ALJ made much of Plaintiff's PHQ-9 score correlating to moderate depression, without discussing his other PHQ-9 scores indicating severe depression.  (Compare AR 550, 619, with AR 1124, 1143, 1155) (showing a range of PHQ-9 scores from 13 to 20).  The ALJ concluded these findings

25cv1035-MSB

were inconsistent with the alleged severity of Plaintiff's mental impairments, without providing any specific explanation.  (AR 619–20.)

Ultimately, an ALJ may not cherry-pick evidence that supports a finding of non-disability while ignoring other evidence that supports a finding of disability.  See, e.g., Jones v. O'Malley, No. 23-16136, 2024 WL 3963835, at *2 (9th Cir. Aug. 28, 2024) (finding error where the ALJ relied on a "single medical note" rather than the full record); Ghanim v. Colvin, 763 F.3d 1154, 1164 (9th Cir. 2014) (finding error where the ALJ "cherry-picked" certain characterizations of symptoms without considering context).  While it may be possible to draw inferences about what testimony is inconsistent, it is the duty of the ALJ to identify those inconsistencies with specificity.  Lambert, 980 F.3d at 1278 (citing Brown-Hunter, 806 F.3d at 494) ("Although the inconsistencies identified by the district court could be reasonable inferences drawn from the ALJ's summary of the evidence, the credibility determination is exclusively the ALJ's to make," and the reviewing court is "constrained to review the reasons the ALJ asserts.").  Thus, the ALJ's selective citation to certain objective medical evidence is not a clear and convincing reason for discounting Plaintiff's testimony.

**c.  Symptom management**

The ALJ also seemingly discounts Plaintiff's testimony because his "back pain symptoms improved with treatment."  (AR 619.)  The Ninth Circuit has held "it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment."  Garrison, 759 F.3d at 1017.  Here, the ALJ noted Plaintiff's back pain improved from steroidal injections, medication, chiropractic care, and physical therapy.  (AR 619 (citing AR 233, 273, 295, 307, 479, 503, 562).)  However, the ALJ failed to assess Plaintiff's alleged improvements as they relate to his "overall well-being and nature of his symptoms."  Garrison, 759 F.3d at 1017.  Moreover, although the record reflects some successful symptom management, it also shows Plaintiff's pain was "unchanged with hydrocodone" and he was prescribed a higher dosage for more pain relief.  (AR 1057.)  At the administrative hearing, Plaintiff testified he experiences persistent pain

25cv1035-MSB

and his only meaningful relief comes from laying down or resting.  (AR 644.)  The ALJ sweepingly rejects Plaintiff's testimony based on his alleged improvement with treatment, without evaluating the full context of his pain and symptoms.  Therefore, this is not a clear, convincing reason for discrediting Plaintiff's testimony.

### d. Daily activities

Lastly, the ALJ discounts Plaintiff's testimony because "the longitudinal record shows [Plaintiff] participates in a range of activities of daily living that are not consistent with the allegations of disabling limitations."  (AR 620–21.)  Daily activities may be used to discredit an individual's testimony about the severity of his symptoms "'if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.'"  Orn v. Astrue, 495 F. 3d 625, 639 (9th Cir. 2007) (quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)).  "[T]he mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability."  Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001).   An individual need not be "utterly incapacitated" to receive disability benefits.  Id.

In Vertigan, the Court determined an ALJ erred by discrediting a claimant's pain allegations because she could "go grocery shopping with assistance, walk approximately an hour in the malls, get together with her friends," among other activities.  Vertigan, 260 F.3d at 1050.  Here, Plaintiff testified to doing activities such as running errands, doing chores around his home, and performing maintenance on cars for friends and family.  (AR 635–44.)  There is substantial evidence in the record that Plaintiff completes these activities while experiencing disabling pain.  Like in Vertigan, Plaintiff's daily activities are "not necessarily transferable to the work setting" and certainly not dispositive of his ability to work eight hours a day, five days a week.  260 F.3d at 1050.  The ALJ did not make any connections between the rejected testimony and contradictory daily activities.  Therefore, the ALJ's conclusion that Plaintiff's daily activities are not consistent with his allegations of disabling pain, without providing any

25cv1035-MSB

specific explanation, does not constitute a clear and convincing reason to reject his symptom testimony.  See Leza v. Kijakazi, No. 21-16079, 2022 WL 819782, at *2 (9th. Cir. Mar. 17, 2022) (citing Garrison, 759 F.3d at 1016).

### 5. Conclusion

In conclusion, the ALJ committed a legal error by failing to specifically identify which of Plaintiff's statements he found not credible or explain why.  Holohan, 246 F.3d at 1208.  Additionally, the ALJ erred by failing to provide clear and convincing reasons, supported by substantial evidence in the record, to support his non-credibility determination.  Brown-Hunter, 806 F.3d at 494.

### VI.   CONCLUSION

The reviewing court may enter a "judgment affirming, modifying, or reversing" the Commissioner's decision.   42 U.S.C. § 405(g).  The reviewing court may also remand the case to the Social Security Administration for further proceedings.  Id.  The reviewing court has discretion in determining whether to remand for further proceedings or award benefits.  See Salvador v. Sullivan, 917 F.2d 13, 15 (9th Cir. 1990); McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).  Remand for further proceedings is warranted where additional administrative proceedings could remedy defects in the decision.  See Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984).  Remand for the payment of benefits is appropriate where no useful purpose would be served by further administrative proceedings, where the record has been fully developed, or where remand would unnecessarily delay the receipt of benefits to which the disabled plaintiff is entitled.  See Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).

The Court finds that remand for further administrative proceedings is appropriate because additional proceedings could remedy the defects in the ALJ's decision. Specifically, the Court **REMANDS so that the ALJ may reexamine** Plaintiff's subjective pain and symptom testimony and the applicable clear and convincing standard in a manner consistent with this Order.  For the foregoing reasons, the Court **ORDERS** that

25cv1035-MSB

judgement be entered **REVERSING** the decision of the Commissioner and **REMANDING** this matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

    **IT IS SO ORDERED.**

Dated:  July 10, 2026

Honorable Michael S. Berg
United States Magistrate Judge

25cv1035-MSB